823 F.2d 1361
 Fed. Sec. L. Rep. P 93,336
Samuel DEUTSCH, Plaintiff-Appellant,
v.
Robert G. FLANNERY, Robert C. Marquis, Richard W. Stumbo,
Jr., Walter J. Treanor, John G. Bannister, Wayne T.
Donnels, John G. McDonald, Justin M. Roach Jr., Joseph
Rosenblatt, Western Pacific Railroad Company and Union
Pacific Corporation, Defendants-Appellees.
 No. 85-1953.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 18, 1986.
Decided July 31, 1987.
 
 Richard M. Meyer, New York City, for plaintiff-appellant.
 Kurt W. Melchior, San Francisco, Cal., Leonard Joseph, New York City, for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before CHAMBERS, FLETCHER and NELSON, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 Samuel Deutsch appeals from an order of the district court granting defendants' motion to dismiss his action on behalf of persons who sold their shares of Western Pacific Railroad Company ("WesPac") in response to a 1980 tender offer by Union Pacific Corporation ("Union Pacific"). Having determined that the complaint before him was "substantially identical" to a complaint previously filed by Deutsch in another court and dismissed there without prejudice pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, the trial judge held that a dismissal in this case was mandated by the doctrine of issue preclusion. We affirm the dismissal in part, reverse in part, and remand for further proceedings.
 
 FACTUAL BACKGROUND
 I. Dismissal of the Previous Action
 
 2
 On July 14, 1983, Deutsch filed an action in the Southern District of New York against Union Pacific, WesPac, and the directors of WesPac, alleging violations of sections 10(b) and 14(e) of the Securities Exchange Act of 1934, as well as breach of fiduciary duty under the common law, all in connection with Union Pacific's offer to purchase WesPac stock for $20 per share. His complaint focused upon a document, issued by Union Pacific and received by all WesPac shareholders, that solicited acceptance of the offer, included a description and valuation of WesPac's assets, estimated WesPac's book value to be $12.79 per share, and contained a unanimous recommendation by the WesPac board that the shareholders accept the offer because the directors regarded the price as fair. Deutsch claimed that the tender offer document failed to disclose the following material information: (i) that the fair market value of WesPac's real estate assets far exceeded the stock's reported book value of $12.79 per share; (ii) that WesPac's failure to pay dividends was due to a scheme by the defendants to depress the market price of the stock; and (iii) that the defendants had planned for Robert Flannery, then WesPac's president, chief executive officer, and dominant shareholder, to acquire a management position with Union Pacific in exchange for his having aided and abetted the fraudulent tender offer.
 
 
 3
 On September 27, 1984, Judge John F. Keenan issued an order dismissing the action, without prejudice, pursuant to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. See Deutsch v. Flannery, 597 F.Supp. 917 (S.D.N.Y.1984). He concluded that the complaint failed to plead fraud with sufficient particularity because it "d[id] not allege facts indicating an intent to deceive, manipulate or defraud or from which such intent may be reasonably inferred." Id. at 922.
 
 
 4
 In addressing Deutsch's primary contention--that the tender offer document failed to disclose the wide discrepancy between the historical cost and the fair market value of WesPac's real estate assets--Judge Keenan first noted the complaint's reliance upon a 1983 proxy statement. Whatever discrepancy the statement might have revealed, Judge Keenan wrote, "there [wa]s no basis for concluding that the size of the land holdings ha[d] not changed or that the value of the land ha[d] not increased since 1980 [the year of the tender offer]." Id. at 921. He also pointed to the complaint's lack of factual support for the contention that "defendants were aware of or recklessly disregarded the value of the land." Id.[1] Finally, he concluded that there could not have been any fraud in this regard because "the existence of the land and its value ... had already been disclosed." Id. "A claim of fraud," Judge Keenan explained, "cannot be based on the defendant's failure to report the future market value of the land because they were under no obligation to report that value. The federal securities laws do not require disclosure of predictions regarding future values." Id. (citations omitted).
 
 
 5
 Deutsch's other two contentions were dismissed more summarily. About WesPac's failure to pay dividends, Judge Keenan responded that WesPac may not have been capable of paying a dividend, and that "[t]he mere fact that a company passe[s] dividends is not enough to support an inference that it d[oes] so fraudulently." Id. On the subject of defendants' plan to install Flannery in a management position with Union Pacific, Judge Keenan decried the lack of factual support for the allegation, and observed that Flannery did not assume the presidency of a Union Pacific subsidiary until 1982 (two years after the tender offer), following the death of the previous president. Id.
 
 II. The Present Complaint
 
 6
 Deutsch failed to take an appeal, see post, note 2, and on December 12, 1984, he filed a new complaint--this time in the Northern District of California--alleging the same federal and state law claims against the same defendants. In response to the previous dismissal, Deutsch made only a few substantive changes in the complaint. First, he alleged that "[d]uring 1980 alone, WesPac sold land carried on its books at $270,000 for $9,397,000, negotiations for which took place, in part, during the pendency of the tender offer." Second, he added an allegation that WesPac directors were afforded the opportunity to sell options that they otherwise could not have exercised, in return for having recommended acceptance of the tender offer and having surrendered their shares of stock for $20 each. Third, he alleged that WesPac was "well able" to pay a dividend prior to the Union Pacific tender offer. And last, he added an allegation that Flannery had sold his stock to Union Pacific for $23.20 per share rather than $20 per share, as stated in the tender offer document.
 
 
 7
 The defendants moved for dismissal, arguing that Deutsch had made only cosmetic changes in his earlier complaint, and that the issue of whether the complaint pleaded fraud with sufficient particularity had already been decided by Judge Keenan in the earlier action. Deutsch responded that the several changes he had made in the complaint rendered unnecessary a redetermination of the Rule 9(b) sufficiency of his original complaint. Accordingly, the court would not have to decide an issue of fact or law "actually litigated and necessarily decided by a valid and final judgment in a prior action between the parties." Segal v. AT & T, 606 F.2d 842, 845 (9th Cir.1979). The district court rejected that argument. On appeal, we agree that the Rule 9(b) sufficiency of Deutsch's final claim--alleging defendants' failure to disclose a plan to install Flannery in a management position with Union Pacific--has already been decided. As to Deutsch's "land valuation" and "stock dividend" claims, we hold that the doctrine of issue preclusion does not control, and that the present complaint's statements of those claims come within the required particularity of Rule 9(b).
 
 DISCUSSION
 I. Issue Preclusion
 
 8
 The litigation of an issue presented and necessarily decided in a prior action between the same parties is foreclosed by the doctrine of issue preclusion. See Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); Segal, 606 F.2d at 844-45. It matters not that the prior action resulted in a dismissal without prejudice, so long as the determination being accorded preclusive effect was essential to the dismissal. See In re Duncan, 713 F.2d 538, 541 (9th Cir.1983); see also 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Sec. 4418 at 171 (1981) ("The most common applications of direct estoppel arise from dismissal of a first action on grounds that do not go to the merits of the claim presented and that are not intended to preclude a second action.") Here, defendants argue that, by virtue of Judge Keenan's dismissal of the previous complaint under Rule 9(b), Deutsch is foreclosed from litigating the issue of whether his present complaint satisfies the requirements of that rule. They contend that the complaints are nearly identical, and that the sufficiency of such a complaint has already been determined by Judge Keenan. Deutsch takes issue with defendants' characterization of his present complaint. He argues that its additional allegations make it sufficiently different from his previous complaint so as to render inapplicable the doctrine of issue preclusion. We evaluate each of Deutsch's claims separately, and review de novo the district court's decision in favor of defendants on this mixed question of fact and law. See A & A Concrete v. White Mountain Apache Tribe, 781 F.2d 1411, 1414 (9th Cir.1986).
 
 
 9
 To the extent that there are no differences in the two complaints, or that the differences obviously lack substantive significance, we agree with the district court. Accordingly, we affirm the dismissal of Deutsch's claim that defendants failed to disclose an alleged plan to install Flannery in a management position with Union Pacific. The present complaint makes precisely the same statement of this claim as the previous complaint.[2] Insofar as Deutsch's additional allegations are colorably responsive to the deficiencies noted by Judge Keenan, however, we must agree with Deutsch. Thus, we disagree with the district court's assessment of the "land valuation" and "stock dividend" claims. With regard to the former, Deutsch has added the allegations about the sale of land in 1980 and the negotiations for the sale of the land during the pendency of the tender offer. As to the latter, he has asserted WesPac's ability to pay a dividend. The present complaint's statement of each claim is different enough to render the doctrine of issue preclusion inapplicable. Cf. Harris v. Jacobs, 621 F.2d 341 (9th Cir.1980) (any doubt about whether issue was actually adjudicated in prior proceeding is resolved against party attempting to apply doctrine of issue preclusion). This is not to say that Deutsch has stated the claims with the requisite particularity. Because we may affirm on any basis appearing in the record, see Oldfield v. Athletic Congress, 779 F.2d 505, 506 (9th Cir.1985), we proceed to determine whether the present complaint's statement of those claims does satisfy the particularity requirement of Rule 9(b).
 
 II. Rule 9(b)
 
 10
 Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). In this circuit, a pleading satisfies the particularity requirement "if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.' " Gottreich v. San Francisco Investment Corp., 552 F.2d 866, 866 (9th Cir.1977) (quoting Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir.1973)); see also Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir.1985) ("Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.").
 
 
 11
 Here, the circumstances constituting the alleged fraud have been stated with sufficient specificity to advise the defendants of the misconduct with which they are charged. About the defendants' asserted failure to reveal the discrepancy between historical cost and fair market value of WesPac's landholdings, Deutsch has alleged that "[d]uring 1980 alone [ (i.e., the year of the tender offer) ], WesPac sold land carried on its books at $270,000 for $9,397,000." Accordingly, Judge Keenan's criticism of the previous complaint for its reliance upon 1983 land values is inapposite here. Further, Deutsch has alleged that the negotiations for those land sales "took place, in part, during the pendency of the tender offer." In so doing, he has cured the other two deficiencies noted by Judge Keenan. First, he has provided support for his allegation that defendants knew of the discrepancy.[3] Second, he has extended his allegation of fraud beyond the non-disclosure of mere predictions regarding future values. During the negotiations for the land, the defendants may have received firm offers to purchase. To the extent that there were any such offers, defendants may have had an obligation to make those "valuations" known to WesPac shareholders. While the federal securities laws may not require the disclosure of predicted future values or even estimated current values, they may require a corporation's disclosure of definite offers to purchase. See South Coast Services Corp. v. Santa Ana Valley Irrigation Co., 669 F.2d 1265, 1270-73 (9th Cir.1982). Requiring the disclosure of such offers does not interfere with the goal of protecting "shareholders who might place indiscriminate trust in estimates of questionable reliability." Id. at 1275 (Fletcher, J., dissenting).[4]
 
 
 12
 About the defendants' asserted failure to reveal the alleged scheme to depress WesPac's market price by failing to pay dividends, Deutsch's present complaint is also sufficiently detailed. The defendants have enough information to frame a responsive pleading. See Bosse v. Crowell Collier and MacMillan, 565 F.2d 602, 611 (9th Cir.1977). "Rule 9(b) does not ... require plaintiffs in a securities fraud case to set forth facts which, because no discovery has yet occurred, are in the exclusive possession of the defendants." Merrit v. Libby, McNeil & Libby, 510 F.Supp. 366, [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 97,848, at 90,238 (S.D.N.Y.1981) (concluding that allegation of conspiracy to eliminate shareholders' dividend rights need not detail acts performed in furtherance of conspiracy in order to meet requirements of Rule 9(b)). Inasmuch as Deutsch's previous complaint was deficient because of its failure to allege WesPac's financial ability to pay a dividend, the present complaint has corrected that deficiency.[5]
 
 
 13
 Thus, Deutsch has pleaded his "land valuation" and "stock dividend" claims with sufficient particularity under Rule 9(b). The defendants have received precise statements of what they allegedly failed to disclose. Of course, Deutsch has not yet proven that defendants violated the federal securities laws or breached their common law duties. We emphasize that "[t]he pleading rules, designed to avoid and reduce long and technical allegations, are necessarily supplemented by procedures involving summary judgment which enable a party to have a judgment in a relatively short time if there is actually no bona fide claim presented." Walling, 476 F.2d at 397.
 
 
 14
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Judge Keenan was struck by the fact that WesPac directors sold their stock in 1980 for the same $20 per share received by Deutsch and his fellow shareholders. That the directors were willing to part with their stock for $20 per share suggests they did not think the price inadequately low. See Deutsch v. Flannery, 597 F.Supp. at 922
 
 
 [2]
 Deutsch argues that a letter from defendants' counsel confirms an agreement by defendants to waive the defense of issue preclusion upon his withdrawal of the appeal from Judge Keenan's dismissal of the previous complaint. Issue preclusion is an affirmative defense that may be waived if not pleaded. See Santos v. Alaska Bar Ass'n, 618 F.2d 575, 576-77 (9th Cir.1980); see also C. Wright, A. Miller & E. Cooper, 18 Federal Practice and Procedure, Sec. 4405, at 32 (1981) ("a party entitled to demand preclusion is also entitled to waive it"). We conclude that there was no waiver here. The letter from defendants' counsel stated that defendants would "not oppose Deutsch's right to file a new complaint arising out of the matters involved in the case," but also reserved their "right to file any and all motions addressed to [such] a ... complaint." The letter makes no mention of issue preclusion. Further, we think it improbable that the defendants would waive issue preclusion in exchange for Deutsch's withdrawal of his Second Circuit appeal, given that such an agreement would allow Deutsch to file the same exact complaint in district court and then proceed to take an appeal if the district court dismissed the complaint on Rule 9(b) grounds. We think it more likely that defendants' counsel was simply confirming the uncontroversial legal proposition that Deutsch had the right to file a new action because the prior action had been dismissed without prejudice
 
 
 [3]
 Insofar as the directors' sale of stock for $20 per share would appear to foreclose a finding of scienter on their part, see ante, note 1, Deutsch's added allegation--that the directors were afforded an opportunity to sell options they otherwise could not have exercised, in return for their surrender of WesPac stock for $20 per share--puts forward a plausible scenario consistent with a finding of scienter
 
 
 [4]
 It remains to be seen whether Deutsch can show that WesPac did receive a firm offer (with its attendant valuation) and that such information was material to the decisions of shareholders who tendered their stock. Cf. TSC Industries v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (defining materiality); Toombs v. Leone, 777 F.2d 465, 469 (9th Cir.1985) (materiality involves " 'assessments peculiarly within the province of the trier of fact' ") (quoting Arrington v. Merrill Lynch, & Pierce, Fenner & Smith, 651 F.2d 615, 619 (9th Cir.1981))
 
 
 [5]
 While, as the district court noted, WesPac may have had no legal obligation to pay a dividend which it was capable of paying, see Marsh v. Armanda Corp., 533 F.2d 978, 986, (6th Cir.1976), cert. denied, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977), the company did have an obligation to make material disclosures. Thus, Deutsch states a proper claim by alleging that the defendants failed to disclose their scheme to depress the market price of WesPac by the non-payment of dividends. See Merrit, 510 F.Supp. 366, [1981 Transfer Binder] at 90,236. On remand, Deutsch must prove the existence of such a scheme and the materiality of information relating to the scheme